E-FILED
Anne Arundel Circuit Court
8/26/2015 4:54:32 PM

## IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

JOSHUA E. HARDIN             *
KRISTEN J. HARDIN
201 Cornell Dr.                 *
Woodsboro MD 21798
                       *

       Plaintiffs,
                       *

                       *     Case No. C-02-CV-15-002805
v.                      *

OCWEN LOAN SERVICING LLC
AKA OCWEN LOAN SERVICING, INC.    *
Serve: Resident Agent
CSC-LAWYERS INCORPORATING SERVICE   *
COMPANY
7 ST. PAUL STREET, SUITE 1660        *
BALTIMORE, MD 21202
                       *

       Defendant              *

                *      *      *      *      *

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

***Class Claim:***

     Joshua E. Hardin and Kristen J. Hardin ("Hardins") file this class action

complaint against Ocwen Loan Servicing, LLC aka Ocwen Loan Servicing, Inc.

("Ocwen") on behalf of themselves and Maryland residents similarly situated, for

Ocwen's illegal acts of accessing plaintiffs' and class members' credit reports after a

bankruptcy discharge without consent or any lawful reason, in violation of the Fair

Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*  This claim will be referred to in

this case as the "Impermissible Claim" or the "Impermissible Class." The class is

defined as:

> **Any person in the State Maryland who obtained a
> discharge of their debt through a bankruptcy**

1



proceeding and after the discharge, the Defendant pulled or obtained a consumer report about that person without a permissible purpose or written authorization within the 5 year period preceding the filing of this complaint. The class excludes any person who falls within the definition if the person is (i) an employee or independent contractor of the Defendant; (ii) a relative of an employee or independent contractor of the Defendant; or (iii) an employee of the Court where this action is pending. This definition may be amended or modified.

### Individual Claims:

In addition to acting as class representatives for the FCRA Impermissible Claim, the Hardins sue OCWEN in their individual capacity and not as class representatives because on an individual basis, OCWEN has harassed them, invaded their privacy, falsely reported their credit status, and violated both statutory and common law consumer protection rights in an attempt to coerce the Hardins to pay an alleged debt that OCWEN knows has been discharged in bankruptcy. Despite Ocwen's actual knowledge that the Hardins do not owe any money to Ocwen, OCWEN has attempted to and threatened to collect money and enforce right a right to collect money with knowledge that no debt exists and no money is owed.

## PARTIES

1. Joshua E. Hardin and Kristen J. Hardin are citizens of Maryland and consumers who have been subject to the illegal acts of OCWEN alleged in this complaint.

2. OCWEN is a Delaware entity engaged in the business of servicing and/or holding mortgage loans in and throughout the State of Maryland and nationwide.

3. Venue is proper in Anne Arundel County, as Ocwen regularly conducts business there.

2

## FACTS

4.  On June 10, 2009, the Hardins filed a Chapter 13 Proposed Plan in Case No. 09-20527 TJC Chapter 13, in which they stated that they would surrender their former home at 156 Fieldstone Court in Frederick, Maryland. The home had served as the collateral securing the claims on their 1st mortgage with Countrywide Home Loans, Inc. and on their 2nd mortgage with FedFinancial FCU.

5.  The Hardins did in fact surrender the house at 156 Fieldstone Court, and have not lived there for over 6 years, since the date of filing the bankruptcy on June 10, 2009.

6.  The Meeting of Creditors in the bankruptcy case occurred on July 23, 2009, and the Hearing on Confirmation of Plan occurred on August 18, 2009.

7.  The Hardins filed a Second Amended Proposed Plan on December 4, 2009, in which they reaffirmed their intent to surrender the home at 156 Fieldstone Court in Frederick, Maryland which secured a 1st and 2nd mortgages.

8.  On December 9, 2013, in violation of the Automatic Stay, Ocwen sent a letter demanding $361,742.10 as the total due. In the letter, Ocwen claimed to be the servicer for a "Creditor" identified as GSAA 2005-6. Ocwen continued to violate the Automatic Stay up to and including the date on which the court approved the Chapter 13 Plan. Further, OCWEN violated the discharge injunction up to and after the Chapter 13 discharge was granted by the court.

9.  Also on December 9, 2013, Ocwen sent a "welcome letter" in which Ocwen stated that it was providing notification of transfer of servicing. Transfer was from Bank of America, NA (successor to Countrywide) to Ocwen. The letter also stated that the

3

BANA prior acct # was 2213998, and that the new Ocwen loan # is 7131233723. The letter listed a "transfer date" 11/30/2013.

10. On December 11, 2013, in violation of the Automatic Stay, Ocwen sent a demand for payment and alleged that the "total amount due" was $83,355.06.

11. On December 16, 2009, the Hon. Thomas J. Catliota entered an Order Confirming the Hardin's Plan. As stated above, the Plan required that the Hardins surrender the house at 156 Fieldstone Court, which they did.

12. On 12/26/2013, Ocwen sent a letter the Plaintiffs offering a loan modification. The letter stated that it was an attempt to collect a debt and any information obtained would be used for that purpose.

13. Each and every letter that OCWEN sent to the Plaintiffs stated that it was an attempt to collect a debt and any information obtained would be used for that purpose. Therefore, this allegation applies to each and every letter referred to in the numbered paragraphs that follow this paragraph.

14. On January 28, 2014, Ocwen accessed Kristen Hardin's credit from Experian. There was no permissible purpose to do so. Ocwen did this again on April 27, 2015, as detailed below.

15. On January 28, 2014, Ocwen accessed Josh Hardin's credit from Experian. There was no permissible purpose to do so. Ocwen did this again on April 27, 2015, as detailed below.

16. On February 20, 2014, Ocwen sent a letter stating it had knowledge Josh Hardin was in active military, but demanding a copy of his orders before they would adjust the

4

loan. The letter stated it was from a debt collector and constituted an attempt to collect a debt.

17. On March 5, 2014, in a continued attempt to collect a debt in violation of the Automatic Stay, Ocwen sent another letter asking for copy of active duty military orders.

18. On March 15, 2014, Ocwen sent a letter to the Plaintiffs regarding expired hazard insurance. This letter stated that it was from a debt collector and any information obtained would be used for that purpose. Unlike some of the other letters Ocwen sent, this particular letter did not contain any type of alleged Bankruptcy disclaimer language.

19. On March 17, 2014, Ocwen sent a "Mortgage Account Statement" and demand for payment of $91,579.94.

20. On March 26, 2014 Joshua Hardin's and Kristen Hardin's Equifax Credit Reports list Ocwen as a "Negative Account" which is "Open." It states it is 120+ days past due, and it was reported on 1/26/2014 that there was a balance of $282,472 and an amount past due of $138,826. Joshua Hardin and Kristen Hardin each disputed this inaccurate information with Equifax, and Equifax performed a reinvestigation, and reported the results on 4/16/2014 (see below).

21. On March 26, 2014: Joshua Hardin's TRANSUNION Report states that he has a joint Ocwen account 120+ days delinquent in amount of $138,826 past due. "Date updated" of 1/31/2014. [i.e. after OCWEN sent the 1099A]. His post-dispute report from 5/2014 does not list Ocwen anywhere.

22. On March 26, 2014: Joshua Hardin's EXPERIAN Credit Report, OCWEN is listed as "Open. $138,826 past due as of Jan. 2014." Also, this credit report shows that OCWEN accessed his credit on 1/28/2014. A subsequent EXPERIAN report as a result of Joshua Hardin's 3/26/2014 Dispute states that: "Petition for Chapter 13 Bankruptcy. $142,231 past due as of Apr 2014."

23. On March 26, 2014, JOSHUA HARDIN FAXED A NOTE TO OCWEN WITH ENCLOSURES: "Chapter 13 bankruptcy July 2009 and foreclosure of residence. Appears previous lenders sold OCWEN and [sic] bad old loan that was discharged via chapter 13. Please remove this loan and burden from my record and fix both my wife and I credit reporting history. Don't hesitate to call with any questions 240-498-6101".

24. On March 26, 2014, both Joshua Hardin and Kristen Hardin properly filed credit disputes with the Consumer Reporting Agencies (CRAs) regarding the inaccurate reporting of the alleged debt to OCWEN.

25. Each of the CRAs properly forwarded to OCWEN the dispute information from Joshua Hardin and Kristen Hardin, in accordance with the requirements of the Fair Credit Reporting Act (FCRA).

26. OCWEN failed to conduct a proper investigation of the disputed account, and as a result, OCWEN continued to furnish false, misleading and inaccurate information about Joshua Hardin and Kristen Hardin to the CRAs. OCWEN's actions in failing to properly investigate and update the account, and in furnishing false information to the CRAs was willful, knowing and intentional. In the alternative, it was negligent.

6

27. On March 29, 2014:  Ocwen sends letter that states: "We have received your correspondence requesting research to be performed for the above referenced loan." And stating they will give a written response within 20 days.

28. On April 2, 2014:  Ocwen sends demand for active duty orders.

29. On April 15, 2014:  Ocwen sends "Mortgage Assistance Resources" letter and debt collection Miranda notice.

30. On April 16, 2014: Joshua Hardin's Equifax dispute regarding Ocwen was completed on April 16 as Confirmation # 4085029152 and states as follows: "This creditor has verified to OUR company that the current status is being reported correctly. Additional information has been provided from the original source regarding this item. If you have additional questions about this item please contact: Ocwen Loan Servicing, LLC., Attn: Research Dept, 12650 Ingenuity Dr, Orlando FL 32826-2703 Phone: (800) 746-2936"

31. On April 17, 2014: Equifax sent ANOTHER dispute completion letter about Equifax regarding Confirmation # 4086045680 which said "Please forward to OUR company a copy of your discharged bankruptcy documents."  Equifax also says that "There is no historical account information currently on this account. The prior paying history on this account has been updated. The status of this account has been updated. Additional information has been provided from the original source regarding this item. If you have additional questions about this item please contact: Ocwen Loan Servicing, LLC., Attn: Research Dept, 12650 Ingenuity Dr, Orlando FL 32826-2703 Phone: (800) 746-2936."

32. On April 17, 2014:  Ocwen sends a Mortgage Account Statement demanding $93,456.09.

33. On April 19, 2014: Ocwen sends a letter regarding forced place insurance.

34. On April 22, 2014:  Ocwen sends letter acknowledging receipt of Hardin's "correspondence requesting research to be performed for the above referenced loan." And indicating that they will "be unable to respond within the twenty (20) day period."

35. On April 26, 2014:  OCWEN sends a "DELINQUENCY NOTICE" stating that payment was due every month from 8/4/2013 through 1/4/2014, for a total due of $93,456.09.

36. On May 2, 2014: Ocwen sends a letter acknowledging that the loan was discharged in bankruptcy in February, 2010 and that the Hardins do not owe any money to OCWEN. The letter states that "Our records indicate" that the debt was discharged on February 3, 2010, and that "Upon review we found that you are not liable for debt [sic] and we can foreclose the property."  The letter also states at the bottom that it is an attempt to collect a debt.  The letter is signed by "Vasista Safaya, Research Department."

37. On May 15, 2014:  Ocwen sends a demand for active duty orders and states in the letter: "In an ongoing effort to improve the quality of customer service, telephone calls to and from Ocwen will be recorded for the coaching and development of our associates."  Plaintiffs never consented to recording of their calls.

38. On May 16, 2014:  Ocwen sends a Mortgage Account Statement demanding payment of $95,301.34.

39. On May 20, 2014:  Ocwen sends a "DELINQUENCY NOTICE" and demand for $95,332.24.

40. On May 31, 2014:  Ocwen sends a letter regarding forced place insurance.

41. On June 16, 2014:  Ocwen sends a Mortgage Account Statement demanding $97,177.49.

42. On June 18, 2014:  Ocwen sends a demand for active duty papers.

43. On June 24, 2014:  Ocwen sends a letter regarding MD HOPE.

44. On July 1, 2014:  Ocwen sends a demand for active duty papers.

45. On July 16, 2014:  OCWEN sends a Mortgage Account Statement demanding $99,053.64.

46. On August 18, 2014:  OCWEN sends a Mortgage Account Statement demanding $100,898.89.

47. On September 16, 2014:  OCWEN sends a Mortgage Account Statement demanding $102,744.14.

48. On September 23, 2014:  Ocwen sends a demand for active duty papers.

49. On October 16, 2014:  OCWEN sends a Mortgage Account Statement demanding $104,589.39.

50. On October 17, 2014:  Ocwen sends a letter regarding Mortgage Assistance Resources.

51. On October 20, 2014:  OCWEN sends a demand for demand for active duty papers.

52. On November 17, 2014:  OCWEN sends a Mortgage Account Statement demanding $106,424.64.

53. On November 18, 2014: On November 18, 2014, Judge Catliota entered an Order Granting Discharge of Debtor(s) After Completion of Chapter 13 Plan, in which the court found that the debtors were entitled to a discharge, and granted them a discharge pursuant to 11 USC Section 1328(a).

54. On October 25, 2014:  OCWEN sent a demand for active duty papers.

55. On October 27, 2014:  Ocwen letter titled "AVISO IMPORTANTE PARA LAS PERSONAS QUE HABLAN ESPANOL":  "We have not received your mortgage payments for the months of 02/01/09 through 11/01/14.  This means your account is now in default, and if you do not make these payments or reach another resolution with us, we may soon refer your loan to foreclosure, to commend the foreclosure process as required by law."

56. On December 4, 2014: OCWEN sends a Mortgage Assistance Resources letter.

57. On December 16, 2014: OCWEN sends a Mortgage Account Statement demanding $108,279.89

58. On December 18, 2014: OCWEN sends a forced place insurance letter.

59. On October 16, 2015: Ocwen sends a Mortgage Account Statement demanding $110,125.14.

60. On January 21, 2015 1/21/2015: Ocwen sends a letter stating that the ARM would adjust as of April 1, 2015, and that the Hardins would be required to make monthly payments of more than $2,741.43.

61. On January 22, 2015: Ocwen sends another letter re Service Members' Civil Relief Act which states "In order to adjust your loan properly we require a copy of your active duty orders...This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose."

62. On January 27, 2015: Ocwen sends a "DELINQUENCY NOTICE" demanding payment of $110,125.14.

63. On January 30, 2015: Ocwen sent a 1099A to Joshua Hardin and a 1099A to Kristen Hardin for cancellation of debt, which listed the date of lender's acquisition or knowledge of abandonment as" 1/06/2014."  Ocwen checked box 5 stating that "the debtor was personally liable for repayment of the debt" when the debt was last modified.

64. On January 31, 2015:  Ocwen reported false information to Equifax, stating that the Hardins have a joint account real estate mortgage, account number 713123XXXX with an amount past due of $166,493.

65. On February 4, 2015:  Ocwen sent a letter regarding forced placed insurance.  The letter stated it was from a debt collector and constituted an attempt to collect a debt.

66. On February 20, 2015:  Ocwen sends SCRA letter requesting copy of military orders, to be used in its attempt to collect a debt.

67. On March 6, 2015: Ocwen sends a demand for payment for forced place insurance on a property that the Hardins had surrendered previously in 2009 (i.e. 5 years ago). The letter stated it was from a debt collector and constituted an attempt to collect a debt.

68. On April 27, 2015:  Ocwen Loan Servicing Inc. obtained Josh Hardin's credit report from Experian.  It had no permissible purpose to do so.

69. On April 27, 2015:  Ocwen Loan Servicing, Inc. obtained Kristen Hardin's credit report from Experian.  It had no permissible purpose to do so.

70. On May 19, 2015:  Ocwen sends SCRA letter requesting copy of military orders.

71. On June 18, 2015:  Ocwen sends SCRA letter requesting copy of military orders.

72. On June 30, 2015, on **KRISTEN HARDIN'S EQUIFAX Report,** Ocwen is listed as an "Closed" account, and later in the report as a "Negative" "Closed Account", joint, and shows that it was "Date Reported: 1/31/2015" in an "Amount Past Due" of $166,493.  Under "Comments" it says merely "Bankruptcy chapter 13" but does not indicate that it was discharged.

73. On July 7, 2015, on **JOSH HARDIN'S EQUIFAX Report, OCWEN** is listed as a "closed account" and indicates "wage earner plan" and "chapter 13" but it does NOT say it was discharged, and is still showing an amount due and owing of $166,493.

74. In addition to violating the laws proscribing the attempt to collect discharged debt, upon information and belief, Ocwen violated its own Policies and Procedures related to bankruptcy accounts in general, and in relation to Notes discharged in bankruptcy in particular.

**CLASS ALLEGATIONS REGARDING FCRA IMPERMISSIBLE PULL CLASS:**

75. This action is also brought as a Class Action under Maryland Rule 2-231.

76. Plaintiffs propose to represent themselves and the class defined above.

77. The named Plaintiffs fall within the Class definition and are each a Class Member.

78. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the Class are readily identifiable from the information and records in the possession, custody or control of the Defendant and the records of the consumer reporting agencies since they charge the Defendant for each pull made by it.

79. Upon information and belief, the Class is sufficiently numerous such that individual joinder of all members is impractical. This allegation is based on the fact that Defendant is a substantial credit provider.

80. There are questions of law and fact common to the Class which predominates over any questions affecting only the individual members of the Class and, in fact, the wrongs alleged against the Defendants are identical. The common issues include, but are certainly not limited to:

(i)      Whether the Defendant obtained or pulled information about the Plaintiffs and members of the Class from a consumer reporting agency;

(ii)     Whether the Defendant can show any permissible purpose or written authorization to obtain or pull private credit information about the Plaintiffs or the members of the class;

13

(iii)   Whether the Defendants acted willfully, as that term has been interpreted under the FCRA, when they pulled or obtained the private information about the Plaintiff or the members of the Class;

(iv)   The amount of statutory damages to be assessed against the Defendants;

(v)   Whether an award of punitive damages against Defendants is appropriate.

81. The Plaintiffs' claims are the same as each member of the Class and are based on the same legal and factual theories. Their claims are typical. There is nothing unusual about the Plaintiffs to warrant a material difference between their claims and the claims of the members of the class.

82. Defendant's likely defenses (though unavailing) are and will be typical of and the same or identical for each of the Class Members and will be based on the same legal and factual theories. There are no valid unique defenses.

83. The named Plaintiffs will fairly and adequately represent and protect the interests of the Class. The named Plaintiffs have retained counsel who are experienced in consumer litigation and who have been appointed as class counsel in a number of class actions asserting claims under consumer protection laws.

84. The named Plaintiffs do not have any interests antagonistic to the members of the Class.

### Certification Under 2-231(b)(2) and (b)(3)

85. The Defendants have acted on grounds that apply uniformly across the Class, so that the statutory relief afforded pursuant to 15 U.S.C. § 1681n is appropriate respecting the Class as a whole. Further, the common questions predominate over

14

any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of Class members' claims, and economies of time, effort, and expenses will be fostered and uniformity of decisions will be ensured.

86. There are no individual questions to establish the claims of the Plaintiffs and the Class Members. The claims are based on the failure of the Defendant to have either a permissible purpose or written authorization to pull or obtain the private information of the Plaintiffs and members of the class.

87. The Class members have suffered damages, losses, and harm similar to those sustained by the named Plaintiffs. This includes the invasion of their privacy. All are entitled to the statutory damages allowed by the FCRA and to any punitive damages that may be awarded as relief for their injury in fact.

## COUNT I - FAIR CREDIT REPORTING ACT IMPERMISSIBLE PULL (CLASS ACTION CLAIM)

88. The Plaintiffs incorporate the foregoing paragraphs.

89. The FCRA, 15 U.S.C. § 1681 b, provides it is permissible to obtain a credit report on a consumer only with the written consent of the consumer or for certain "permissible purposes," which insofar as pertinent are the extension of credit to, or review or collection of an account of, the consumer, employment purposes, the underwriting of insurance, or in connection with a business transaction that is initiated by the consumer.

90. The requester must affirmatively certify to the consumer reporting agency that a permissible purpose exists. 15 U.S.C. § 1681 b(f).

15

91. Defendants obtained or pulled the consumer report of the named Plaintiffs and the members of the class without written permission or a "permissible purpose".

92. To obtain the consumer report of the named Plaintiffs or the class members, the Defendants had to affirmatively certify that they had either written consent or a permissible purpose.

93. The Defendants knew that they did not have either written consent or a permissible purpose.

94. The FCRA, 15 U.S.C. § 1681q, provides:

> **§ 1681q.  Obtaining information under false pretenses**
> **Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under title 18, United States Code, imprisoned for not more than 2 years, or both.**

95. The Defendants obtained information about the named Plaintiffs and the class members under false pretenses since the Defendants did not have a permissible purpose or written permission.

96. The FCRA, 15 U.S.C. § 1681n, provides:

> **§1681n.  Civil liability for willful noncompliance**
> **(a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§ 1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of -**
> **(1)**
> **(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $1,000; or**
> **(B) in the case of liability of a natural person for obtaining a Consumer report under false pretenses**

> or knowingly without a permissible purpose, actual
> damages sustained by the consumer as a result of
> the failure or $1,000, whichever is greater;
> (2) such amount of punitive damages as the court
> may allow;
> and
> (3) in the case of any successful action to enforce
> any liability under this section, the costs of the
> action together with reasonable attorney=s fees as
> determined by the court....

97.   The FCRA, 15 U.S.C. § 1681p, provides:

> **§ 1681p.  Jurisdiction of courts; limitation of actions**
> An action to enforce any liability created under this
> title [15 USC §§ 1681 et seq.] may be brought in any
> appropriate United States district court without
> regard to the amount in controversy, or in any other
> court of competent jurisdiction, within two years
> from the date on which the liability arises, except
> that where a defendant has materially and willfully
> misrepresented any information required under
> this title [15 USC §§ 1681 et seq.] to be disclosed to
> an individual and the information so
> misrepresented is material to the establishment of
> the defendant's liability to that individual under this
> title [15 USC §§ 1681 et seq.], the action may be
> brought at any time within two years after the
> discovery by the individual of the
> misrepresentation.

98. The named Plaintiffs and the class members have had their privacy illegally invaded
as a result of Defendants' willful actions and they are entitled to statutory damages
allowed by the FCRA for this injury.

99. The Defendants actions support an award of punitive damages since they acted
willfully and knowingly, including by making false certifications to pull or obtain the
private information of the Plaintiff and class members.

100.   Wherefore, the named Plaintiffs pray for the following relief and judgment in
their favor and the members of the class and against the Defendant:

17

a. The Court certify a class of persons defined herein as may be modified or amended;

b. Appoint Plaintiff and his counsel to represent the class certified;

c. Award statutory damages to the Plaintiff and each class member;

d. Award punitive damages against the Defendants;

e. Award the Plaintiff and Class their costs, including attorney fees.

f. Award such other and further relief as may be appropriate and proper.

### COUNT II – FCRA FAILURE TO INVESTIGAGE CLAIM (INDIVUDAL CLAIMS ONLY)

101. In addition to the violations of 1681b and 1681q, Ocwen also violated § 1681s-2(b) of the FCRA when it willfully or negligently failed to investigate the dispute that the Plaintiffs sent to the CRAs, which in turn sent the disputes to Ocwen, the furnisher.

102. Ocwen was acting as a furnisher of credit information as defined by the FCRA.

103. The Plaintiffs disputed information provided by Ocwen through a formal dispute to the CRA, as required by the FCRA.

104. The CRA forwarded the dispute to Ocwen as required by § 1681i of the FCRA.

105. Ocwen willfully failed to investigate the dispute and willfully failed to review all relevant information provided, as required by § 1681s-2(b) of the FCRA.

106. After conducting its investigation (or without doing any investigation as required) Ocwen willfully failed to modify, delete, or block the reporting of the disputed information despite knowing or having reason to know it was inaccurate.

107.   In the alternative to acting willfully, Ocwen was negligent in failing to investigate the dispute and review all information provided, as required by § 1681s-2(b) of the FCRA.

108.   In the alternative to acting willfully, after conducting its investigation (or without dong any investigation as required), Ocwen negligently failed to modify, delete, or block the reporting of the disputed information despite knowing or having reason to know that it was inaccurate.

109.   As a direct and proximate result the Ocwen's violations of the FCRA, the Plaintiffs suffered economic and non-economic damages including severe emotional distress and damage to their credit, and other legally cognizable injury, harm, and actual damages.

WHEREFORE, the Plaintiffs pray for judgment in their favor for the following relief against Ocwen on this Count:

a. An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000 as well as statutory damages up to $1,000;

b. An award of punitive damages against Ocwen in an amount to be determined at trial;

c. An award of costs, including reasonable attorney's fees.

d. Such and other further relief the nature of the Plaintiff's cause may require.

### COUNT III (FDCPA)
### (INDIVUDAL CLAIMS ONLY)

110.   The Plaintiffs incorporate the factual allegations made in the preceding paragraphs.

19

111. The Plaintiffs are each a "consumer" as defined by 15 U.S.C. § 1692a(3).

112. The alleged debts at issue in this case are a "debt" within the meaning of 15 U.S.C. § 1692a(5).

113. The Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

114. The Defendant regularly engages in collection efforts through the mails and interstate commerce for debts that it did not originate and that it acquires in default.

115. The Defendant violated the preface to 15 U.S.C. § 1692e because it used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt.

116. The Defendant violated 15 U.S.C. § 1692e(2) because it sent written communications, which contain false representations of the character, amount and legal status of the alleged debt.

117. The Defendant violated 15 U.S.C. § 1692e(5) because the written communications were a threat to collect more than what could be legally claimed.

118. The Defendant violated 15 U.S.C. § 1692e(10) because the written communications, made use of false representations or deceptive means to collect a debt.

119. The Defendant violated 15 U.S.C. § 1692f because it practices are an unfair or unconscionable means to collect or attempt to collect debts.

120. The Defendant violated 15 U.S.C. § 1692f(1) because attempted to collect an amount which included interest, collection costs or expenses not authorized by the agreement creating the alleged debt or permitted by law.

121.   Specifically, the Defendant demanded money that the Plaintiffs do not owe because any alleged debt was discharged in bankruptcy.

122.   This conduct has the natural consequence of harassing, oppressing and abusing the Plaintiffs in connection with the collection of an alleged debt.

123.   As a result of the Defendant's illegal acts, the Plaintiffs have suffered actual damages for which they are entitled to be compensated, and also are entitled to statutory damages.

## COUNT IV – MCDCA
### (INDIVIDUAL CLAIM ONLY)

124.   The Plaintiffs incorporate the factual allegations made in the preceding paragraphs.

125.   The Defendant's actions described herein violate the Maryland Debt Collection Practices Act, § 14-201 *et. Seq.* of the Maryland Commercial Law Article.

126.   In violation of § 14-202(8), the Defendant claimed, attempted or threatened to enforce a right with knowledge that the right does not exist.

127.   The Defendant sought to collect that had already been adjudicated in favor of Plaintiff.

128.   The Defendant sought amounts in excess of the amount legally due.

129.   In violation of § 14-202(6), the Defendant communicated with such frequency, during such unusual hours and in such a manner as reasonably could be expected to abuse or harass the Plaintiff.

130.   The Defendant's illegal actions caused the Plaintiffs to have emotional distress and mental anguish, and otherwise caused injury or loss and both economic and non-economic damages to the Plaintiff.

131.   Plaintiffs are entitled to damages.

## COUNT V – MCPA
## (INDIVIDUAL CLAIMS ONLY)

132.   The Plaintiffs incorporate the factual allegations made in the preceding paragraphs.

133.   The Defendant's acts constitute an unfair or deceptive trade practice under Maryland law, including violations of several provisions of the Maryland Consumer Protection Act, including but not limited to:

a.    § 13-301(1): Making false or misleading oral or written statements which have the tendency or effect of deceiving or misleading consumers;

b.    § 13-301(3): Failure to state a material fact which deceives or tends to deceive;

c.    § 13-301(14)(iii): Violation of the Maryland Consumer Debt Collection Act.

134.   The Plaintiffs relied on the Defendant's representations.  In so doing, they sustained damages in the form of having to take time out to dispute the debt, both verbally and in writing, and in the form of out of pocket expenses in the form of gas and mileage spent to meet with an attorney, and in the form of costs and attorney's fees incurred.

22

135.   The Plaintiffs sustained actual injury or loss as the proximate result of the

Defendant's practices which are prohibited by the MCPA, and has otherwise suffered

actual damages caused by the Defendant's actions.

_/s/_____

PETER A. HOLLAND
Fed. Bar No. 10866
The Holland Law Firm, P.C.
1910 Towne Centre Blvd. Ste. 250
P.O. Box 6268
Annapolis, MD  21401
(410) 280-6133
(410) 280 8650 fax
peter@hollandlawfirm.com

/s/_____

Scott C. Borison
Fed Bar. No. 22576
Legg Law Firm, LLP.
1900 S. Norfolk Rd. Suite 350
San Mateo CA 94403
Borison@legglaw.com
MD Office:
5235 Westview Dr. Suite 100
Frederick, Maryland 21703
(301) 620-1016
Fax: (301) 620-1018
Borison@legglaw.com

## REQUEST FOR TRIAL BY JURY

Plaintiffs request a trial by jury of any claims that may be determined by a jury.

____/s/_____

PETER A. HOLLAND

23